IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| **JUSTIN FLINN,** *Plaintiff,* v. **EDWARD LAWLESS and DAVID NGUYEN,** *Defendants.* | **CIVIL ACTION** **NO. 24-2706** |
|---|---|

**Baylson, J.**                                                                August 19, 2025

**MEMORANDUM RE: SUMMARY JUDGMENT**

Plaintiff Justin Flinn ("Flinn") brings this case against Pennsylvania State Troopers Edward Lawless ("Lawless") and David Nguyen ("Nguyen") (together, "Defendants") for violations of his constitutional rights and rights under state law. ECF 1. For the reasons stated below, the Motion for Summary Judgment, ECF 25, is **GRANTED in part and DENIED in part**.

**I.    FACTUAL ALLEGATIONS**[1]

**A.    911 Call**

On June 25, 2022, at 6:41 p.m., Joshua McLaughlin ("Joshua") called 911 and requested officers at the residence ("Residence") of his uncle, Rodman McLaughlin ("Rodman"). Defs.' Statement of Undisputed Material Facts ¶ 1, ECF 25-1 ("SUMF"); Plf.'s Resp. to Defs.' Statement of Undisputed Material Facts ¶ 1, ECF 28-1 ("RSUMF"). Joshua told the 911 operator that he and Rodman had been requesting that an intoxicated man leave the Residence for one hour, but that the man refused to leave, so they locked him out. SUMF ¶¶ 3–4; RSUMF ¶¶ 3–4. Joshua told the 911 operator that the intoxicated man tried to get his belongings from inside the house and when

---

[1] Considering the undisputed facts, and the disputed facts in the light most favorable to the non-movant, the events giving rise to this case are as follows.

Joshua and Rodman said no, the man got into his car, went to the top of the driveway, and drove into Joshua's pickup truck. Def Ex. 15. Joshua told the operator that the man was likely now at the top of the driveway. SUMF ¶ 6; RSUMF ¶ 6.

### B. Pennsylvania State Troopers' Encounter with Plaintiff

After the 911 call, Nguyen and Lawless, as well as Pennsylvania State Troopers Henry Kim, Devin Jones, and Erica Boadi (together, "Responding Troopers"), arrived at the Residence. SUMF ¶ 7; RSUMF ¶ 7.[2] Defendants and the Responding Troopers observed a man ("Flinn") standing near the top of the Residence's driveway. SUMF ¶ 9; RSUMF ¶ 9. Nguyen and Responding Troopers Jones and Boadi approached him. SUMF ¶ 10; RSUMF ¶ 10. Nguyen observed that Flinn was visibly intoxicated, had slurred speech, was unsteady on his feet, and smelled like alcohol. SUMF ¶ 11; RSUMF ¶ 11. When Nguyen asked Flinn if he had been drinking, Flinnhe admitted that he had at least two hours earlier. SUMF ¶ 12; RSUMF ¶ 12. Flinn stated that he was attempting to call an Uber to leave. Plf.'s Add'l Statement of Undisputed Material Facts ¶ 104, ECF 28-1 ("ASUMF"); Defs.' Resp. to Plf.'s Statement of Undisputed Material Facts ¶ 104, ECF 31-1 ("RASUMF"). Nguyen stated that this was a DUI investigation and asked Flinn if he would submit to a field sobriety test and/or preliminary breath test. Def. Ex. 17 at 1:30–1:55; SUMF ¶¶ 34, 36; RSUMF ¶¶ 34, 36. Flinn refused. SUMF ¶¶ 35, 37; RSUMF ¶¶ 35, 37. Nguyen observed that Flinn was agitated and acting irate[3] toward Rodman because he

---

[2] Lawless joined the Pennsylvania State Police in November 2021 and graduated from the Pennsylvania State Police Academy in May 2022. Plf.'s Add'l Statement of Undisputed Material Facts ¶ 107, ECF 28-1 ("ASUMF"); Defs.' Resp. to Plf.'s Statement of Undisputed Material Facts ¶ 107, ECF 31-1 ("RASUMF"). On June 25, 2022, Nguyen was Lawless' Field Training Officer. RASUMF ¶ 107.

[3] Flinn pointed at Rodman and screamed profanities. SUMF ¶ 14; RSUMF ¶ 14.

2

believed Rodman called the police. SUMF ¶ 13; RSUMF ¶ 13. Nguyen asked Flinn for his name. SUMF ¶ 15; RSUMF ¶ 15. Responding Trooper Jones stated that the man's name was Justin Flinn. Def. Ex. 16 at 3:15–3:17. Flinn stated, "why are you doing this?" Def. Ex. 16 at 3:15–3:22; SUMF ¶¶ 17–1187; RSUMF ¶¶ 17–18.

While Nguyen and Responding Troopers Jones and Boadi spoke to Flinn, Lawless went down the driveway toward the Residence to determine whether a car crash occurred. SUMF ¶ 19; RSUMF ¶ 19. Lawless observed a silver Chevrolet Equinox with front end damage, including leaking fluid and a head bent upwards.[4] SUMF ¶¶ 20–21; RSUMF ¶¶ 20–21. Lawless asked Flinn whether he owned the Chevrolet. SUMF ¶ 22; RSUMF ¶ 22. Flinn said that he did. SUMF ¶ 23; RSUMF ¶ 23. Nguyen asked Flinn whether he drove the Chevrolet into Joshua's pickup truck. SUMF ¶ 24; RSUMF ¶ 24. Flinn denied driving his Chevrolet and denied crashing it into the pickup truck. SUMF ¶ 25; RSUMF ¶ 25.

Nguyen observed that the long driveway of the Residence led to Gradyville Road, a public road. SUMF ¶¶ 28–29; RSUMF ¶¶ 28–29. Nguyen and Responding Trooper Kim spoke with and obtained a statement from Rodman. SUMF ¶ 26; RSUMF ¶ 26. Rodman informed Nguyen and Responding Trooper Kim that as Flinn drove the Chevrolet up the driveway toward Gradyville Road, Rodman lost sight of the car. SUMF ¶ 30; RSUMF ¶ 30. Rodman stated that he regained sight of the car after Flinn turned it around and backed down the driveway to hit the pickup truck. SUMF ¶ 31; RSUMF ¶ 31.

Nguyen determined that Flinn's statement denying driving his Chevrolet was untruthful. SUMF ¶ 33; RSUMF ¶ 33. Nguyen decided to arrest Flinn. SUMF ¶ 39. Over seven seconds,

---

[4] The parties dispute whether there was damage to both cars or only the Chevrolet.

Nguyen asked Flinn three times to step forward from the car he was leaning on. Def. Ex. 16 at 15:10–18. Flinn remained leaning against the car. Id. Then, Nguyen stepped towards Flinn and reached forward to secure his left arm. Id. at 15:18–15:24; SUMF ¶ 47; RSUMF ¶ 48. Flinn raised his left arm and said, "are you guys . . ." Id. at 15:18–15:24; SUMF ¶ 48; RSUMF ¶ 48. Nguyen grabbed Flinn's left arm and placed it behind his back. SUMF ¶ 50; RSUMF ¶ 50. Lawless grabbed Flinn's right hand and placed it behind his back. SUMF ¶ 51; RSUMF ¶ 51. Responding Trooper Boadi secured Flinn's right hand. SUMF ¶ 52; RSUMF ¶ 52. While Nguyen and Responding Trooper Boadi held Flinn's hands behind his back, Lawless attempted to place Flinn in handcuffs. SUMF ¶ 53; RSUMF ¶ 53. Nguyen and Responding Trooper Jones stated, "relax" and "stop fighting." SUMF ¶ 55; RSUMF ¶ 55. Responding Trooper Kim joined the Defendants and Responding Troopers; five State Troopers surrounded Flinn. Def. Ex. 16 at 15:25–15:31. Flinn repeatedly stated, "Why are you doing this?" and "What did I do, bro?" Id. at 15:29 to 15:45.[5]

Thirty-seven seconds after Nguyen took hold of Flinn's wrist, Def. Ex. 16 at 15:22–15:59, Nguyen, while standing beside Flinn, placed his right leg in front of Flinn's left leg, SUMF ¶ 67, RSUMF ¶ 67, placed his left hand on the back of Flinn's neck, and placed his right hand to hold one of Flinn's arms, which were behind his back (the "leg sweep"), Def. Ex. 16 at 15:59. Responding Trooper Jones held Flinn's left shoulder. Id. at 16:00–16:02. Flinn was sent forward and landed on the grass, repeatedly screamed about pain to his leg.[6] Id. at 16:00–16:38. Responding Trooper Kim placed Flinn's hands in handcuffs while Flinn screamed about pain to

---

[5] As detailed further below, there is a genuine dispute of material fact about whether Flinn was moving his wrists apart behind his back and resisting arrest.

[6] The parties dispute whether Flinn's left wrist was already secured in a handcuff at the time he landed on the ground. ASUMF ¶ 106; RASUMF ¶ 75 106.

4

his leg. Id. at 16:14. Nguyen requested medical services and, while waiting, Defendants and Responding Troopers provided medical assistance to Flinn. SUMF ¶¶ 74–75; RSUMF ¶¶ 74–75.

### C. Hospital, Surgery, and Alcohol Use Treatment

An ambulance arrived at the Residence and transported Flinn to Riddle Hospital (the "Hospital"). SUMF ¶ 76; RSUMF ¶ 76. Following his arrival at the Hospital, Flinn was asked whether he would submit to a blood draw to determine his blood alcohol level. SUMF ¶ 77; RSUMF ¶ 77. Flinn refused.[7] SUMF ¶ 78; RSUMF ¶ 78. Flinn remained at the Hospital overnight, and the following day, on June 26, 2022, underwent surgery to repair a fracture in his right leg. SUMF ¶ 79; RSUMF ¶ 79. Flinn remained at the Hospital for three days following surgery and was discharged on June 29, 2022. SUMF ¶ 82; RSUMF ¶ 82.[8]

### D. Criminal Complaints Against Flinn

On July 5, 2022, Lawless filed a criminal complaint against Flinn, charging him with Driving Under the Influence ("DUI") and Unsafe Driving, Resisting Arrest, Disorderly Conduct, and Driving with a Suspended License for DUI. SUMF ¶¶ 87–88; RSUMF ¶¶ 87–88.[9] Nguyen supervised Lawless in preparing the charges filed against Flinn. ASUMF ¶ 113; RASUMF ¶ 113.

---

[7] On June 26, 2022, Defendant Lawless obtained a search warrant to acquire a sample of Flinn's blood collected on the date of his arrival to Riddle Hospital. SUMF ¶ 80; RSUMF ¶ 80. Defendants Lawless and Nguyen served Riddle Hospital with the search warrant, and obtained a blood sample reflecting that Plaintiff had a blood alcohol percentage of .314 when he arrived at the emergency department of Riddle Hospital. SUMF ¶ 81; RSUMF ¶ 81.

[8] After being released from the hospital, Flinn admitted himself to rehabilitation facility. SUMF ¶ 83; RSUMF ¶ 83. Flinn received treatment for alcohol use for three weeks and was discharged in July of 2022. SUMF ¶ 84; RSUMF ¶ 84.

[9] Following his discharge from rehabilitation, Flinn travelled to Oregon to visit a friend in October 2022. SUMF ¶ 89; RSUMF ¶ 89. Flinn remained in Oregon for one month and returned to Pennsylvania in November 2022. SUMF ¶ 90; RSUMF ¶ 90.

On November 25, 2022, Flinn was arrested by the Radnor Township Police Department ("Radnor") in Pennsylvania. SUMF ¶ 91; RSUMF ¶ 91. That same day, Radnor filed a criminal complaint charging Flinn with Burglary, Criminal Trespassing, Criminal Mischief, Tampering with Property, Disorderly Conduct, and Public Drunkenness (the "Burglary charges"). SUMF ¶ 92; RSUMF ¶ 92. Flinn was confined in Delaware County Prison. SUMF ¶ 94; RSUMF ¶ 94.

Following Flinn's arrest for the Burglary charges, it was discovered that Flinn had an outstanding criminal complaint filed against him by Lawless. SUMF ¶ 95; RSUMF ¶ 95. On December 14, 2022, while Flinn was confined in Delaware County Prison for the Burglary charges, Flinn attended a hearing for the criminal complaint filed by Lawless. SUMF ¶ 96; RSUMF ¶ 96. The judge dismissed the DUI and Unsafe Driving charge and the Driving with a Suspended License for DUI charge and determined that the Disorderly Conduct charge would proceed to trial. SUMF ¶ 97; RSUMF ¶ 97.

On May 2, 2023, Flinn pled guilty to the Criminal Trespassing charge brought by the Radnor. SUMF ¶ 99; RSUMF ¶ 99. That same day, Flinn also pled guilty to the Disorderly Conduct charge brought by Lawless and received "no further penalty." SUMF ¶ 100; RSUMF ¶ 100. Flinn made specific factual admissions about being unreasonably loud and offensive before Defendants and the Responding Troopers arrived at the Residence. ASUMF ¶ 102; RASUMF ¶ 102. Flinn served time for Criminal Trespassing and other charges unrelated to the Disorderly Conduct charge for two years; he was released June 27, 2024. SUMF ¶ 101; RSUMF ¶ 101.

II. **PROCEDURAL HISTORY**

On June 20, 2024, Flinn filed a Complaint against Defendants bringing claims for false arrest (Count I), malicious prosecution (Count II), excessive force (Count III), assault and battery (Count IV), and intentional infliction of emotional distress (Count V). ECF 1. Defendants filed

6

an answer on August 19, 2024. ECF 5. Discovery closed on April 30, 2025. ECF 21. On May 21, 2025, Defendants filed a Motion for Summary Judgment. ECF 25. Plaintiff opposed the Motion, ECF 28, and Defendants filed a reply brief in further support of the Motion, ECF 31.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-movant bears the burden of proof, the movant's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the movant has met its initial burden, the non-movant's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-movant fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

### IV. DISCUSSION

**A. Count I: False Arrest**

Count I brings a claim for False Arrest under the Fourth and Fourteenth Amendments. ECF 1 ¶¶ 55–59. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED** in favor of Defendants as to Count I.

1. **Fourteenth Amendment**

Claims for unlawful arrest are cognizable under the Fourth Amendment. See Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010) (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995)). Because Flinn's claim arises from his arrest, Count I is properly analyzed under the "more-specific provision" of the Fourth Amendment "[b]ecause [it] provides an explicit textual source of constitutional protection against this sort of" conduct rather than the more general notion of substantive due process. Graham v. Connor, 490 U.S. 386, 395 (1989).[10]

2. **Fourth Amendment**

To prevail on a false arrest claim under the Fourth Amendment, a plaintiff must show that the police lacked probable cause to arrest him. Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). Probable cause exists when, "at the time of the arrest, the facts and circumstances within the officer's knowledge are 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Probable cause for any offense will defeat a false arrest claim. See Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) (citation omitted).

---

[10] Further, Flinn's failure to respond to Defendants' argument on viability of his Fourteenth Amendment claim may constitute abandonment. See Certain Underwriters at Lloyd's London v. Creagh, No. 12-571, 2013 WL 3213345, at *7 (E.D. Pa. June 26, 2013) (DuBois, J.), aff'd sub nom. Certain Underwriters at Lloyds of London Subscribing to Policy No. SMP3791 v. Creagh, 563 F. App'x 209 (3d Cir. 2014) (non-precedential).

"[A] § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." Gilles v. Davis, 427 F.3d 197, 208–09 (3d Cir. 2005) (citing Heck v. Humphrey, 512 U.S. 477, 487 (1994)). A guilty plea to any charge for which the plaintiff was arrested, even for a lesser offense, establishes probable cause and defeats a false arrest claim. See White v. Brown, 2010 WL 1718205, at *5 n.4 (E.D. Pa. April 28, 2010) (Robreno, J.) ("[A] guilty plea, standing alone, represents sufficient evidence of probable cause to justify an arrest."); Fields v. City of Pittsburgh, 714 F. App'x 137, 140–41 (3d Cir. 2017) (non-precedential) (holding that guilty plea to lesser offense conceded probable cause and barred false arrest claim on another offense).

While Flinn argues his guilty plea was for an offense that occurred outside of police presence and that he conceded only that there was probable cause to cite him, Flinn cites no authority suggesting that pleading guilty to a summary offense in the moments leading up to interaction with the police avoids the implication of probable cause. See Shilling v. Brush, 2007 WL 210802, at *13 (W.D. Pa. Jan. 22, 2007) ("Plaintiff's guilty plea to disorderly conduct establishes that probable cause existed to support her arrest."). It is undisputed that "probable cause existed for [] one of the crimes charged" here; Flinn submits no evidence to the contrary.[11] See Dempsey, 834 F.3d at 477. Any finding that Flinn's false arrest claims were valid would impermissibly imply that his underlying conviction for disorderly conduct was invalid. See Gilles, 427 F.3d at 208–09. While probable cause is typically a jury question, summary judgment is appropriate here, where no reasonable jury, viewing the evidence in the light most favorable to

---

[11] Flinn acknowledges the existence of probable cause related to one of the charges. ECF 28-2 at 6 ("Defendants had probable cause only for Summary Disorderly Conduct.").

Flinn, could support a contrary factual finding. See Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

### B. Count II: Malicious Prosecution[12]

Count II brings a claim for malicious prosecution related to Defendants' alleged false charges against Flinn. ECF 1 ¶¶ 60–63. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED** in favor of Defendants as to Count II.[13]

Malicious prosecution is actionable under § 1983 if the plaintiff shows that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Harvard v. Cesnalis, 973 F.3d 190, 203 (3d Cir. 2020) (quoting Estate of Smith, 318 F.3d at 521)).

To succeed on a malicious prosecution claim under the Fourth Amendment, "a plaintiff must show that a government official charged him without probable cause." Chiaverini v. City of Napoleon, Ohio, 602 U.S. 556, 558 (2024). Probable cause exists "if 'at the moment the arrest was made . . . the facts and circumstances within the officers' knowledge and of which they had

---

[12] The Complaint asserts a claim for malicious prosecution under Count II but does not identify the source of the claim. ECF 1 ¶¶ 60–63. The Court assumes that this claim is based in the Fourth Amendment and analyzes malicious prosecution under § 1983 by looking to the analogous common law tort in the state of Pennsylvania. See Thompson v. Clark, 596 U.S. 36, 43 (2022); Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010).

[13] Even if there were genuine issues of material fact that precluded summary judgment as to each of the disputed charges, Defendants may be entitled to qualified immunity on the malicious prosecution claim. See Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021).

reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Probable cause "does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Zimmerman v. Corbett, 873 F.3d 414, 418 (3d Cir. 2017) (emphasis added).  Even if a person is charged with multiple legitimate charges, the government can be sued for malicious prosecution if one charge lacked probable cause.  See Chiaverini v. City of Napoleon, Ohio, 602 U.S. 556, 562–64 (2024).

1. **DUI Charge**

Flinn was charged with DUI and Unsafe Driving in violation of § 3802(a)(1) of the Pennsylvania Vehicle Code.  SUMF ¶ 87; RSUMF ¶ 87.  The Pennsylvania Vehicle Code prohibits an individual from driving "a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safe driving" on "[public] highways and trafficways . . . ." §§ 3802, 3101(b).  Flinn argues that it is disputed whether the facts and circumstances within Defendants' knowledge reasonably suggested that Flinn drove onto a public roadway while intoxicated.

Based on the undisputed facts, no jury could find that Defendants had no "reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged." Corrigan v. Cent. Tax Bureau of Pa., Inc., 828 A.2d 502, 505 (Pa. Commw. Ct. 2003).  Rather, there was probable cause that Flinn drove onto Gradyville Road while intoxicated based on the undisputed facts that on the 911 call, Joshua told the operator that Flinn drove towards the top of the driveway and went out of his line of vision, Def. Ex. 15, and that there was, at minimum, front end damage

11

to Flinn's car, SUMF ¶ 20; RSUMF ¶ 20. Thus, Flinn's claim of malicious prosecution of the DUI charge cannot proceed. See Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998); Corrigan, 828 A.2d at 505.

### 2. Resisting Arrest

Flinn was charged with Resisting Arrest in violation of Pennsylvania Crimes Code § 5104. SUMF ¶ 87; RSUMF ¶ 87. This requires that "(1) the [arrestee] acts with the intent to prevent a lawful arrest; (2) using means requiring or justifying a use of force by police; and (3) the force required or justified is substantial." Commonwealth v. Crosby, 329 A.3d 1141, 1149 (Pa. 2025). Flinn argues that he was not resisting arrest, and that Lawless was insufficiently trained and thus struggled to handcuff Flinn. ASUMF ¶¶ 108–109. Flinn argues that there was no probable cause for the charge of resisting arrest, id.,[14] while Defendants argue Lawless was unable to secure Flinn's hands because he was moving his wrists apart, establishing probable cause for a resisting arrest charge. See Def. Ex. 16 at 15:22–15:59.

Viewing the evidence in the light most favorable to Flinn, a genuine issue of material fact exists as to whether Flinn was moving his wrists apart to prevent arrest or whether Lawless was having trouble securing the handcuffs, leading to almost one minute of time before Flinn was handcuffed. The video footage is not conclusive. The Court cannot, based on the current record, determine whether the facts and circumstances known to Defendants at the time of Flinn's arrest were sufficient to warrant a reasonable officer to believe Flinn was resisting arrest, and a reasonable jury could interpret the footage and surrounding circumstances in Flinn's favor.

---

[14] Flinn testified at his deposition that he "was just standing there" while Defendants were arresting him. Def. Ex. 1 at 84:14–15. Flinn testified that he did not "think [he] ever really yanked away from and started fighting with" Nguyen. Id. at 82:14–24.

12

Nonetheless, Flinn cannot prevail on this malicious prosecution claim because he puts forth no evidence that Defendants acted with malice. Johnson, 477 F.3d at 81–82; see Thompson v. Clark, 596 U.S. 36, 60 (2022) (Alito, J., dissenting) ("Malice is the hallmark of a malicious-prosecution claim."). In this context, malice "is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988), abrogated on other grounds by, Albright v. Oliver, 510 U.S. 266 (1994). Flinn fails to point to any evidence in the record that creates a genuine issue of material fact about Defendants' alleged malice. Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare, 402 F.3d 374, 379 (3d Cir.2005) (citing Fed. R. Civ. P. 56(e)). In the absence of such evidence, summary judgment as to malicious prosecution for resisting arrest is warranted in favor of Defendants.[15]

### 3. Driving with a Suspended License for DUI

Flinn was charged with Driving with a Suspended License for DUI in violation of § 1543(b)(1)(i) of the Vehicle Code. SUMF ¶ 87; RSUMF ¶ 87. For the same reasons discussed above regarding the DUI charge, the facts available to Defendants reasonably suggested that there was a fair probability that Flinn operated his car on a Gradyville Road while turning his car around while his driver's license was suspended for previously driving under the influence. Defendants' driving with a suspended license charge had probable cause. See Zimmerman, 873 F.3d at 418

---

[15] As the Third Circuit has noted, "summary judgment is essentially 'put up or shut up' time for the non-moving party," who must "rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (citing Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109–10 (3d Cir. 1985)).

(quoting Orsatti, 71 F.3d at 482–83). Thus, Flinn's claim of malicious prosecution of this charge cannot proceed. See Montgomery, 159 F.3d at 124; Corrigan, 828 A.2d at 505.

### C. Count III: Excessive Force

Count III brings a claim for excessive force related to Defendants' intentional use of a leg sweep during Flinn's arrest. ECF 1 ¶¶ 64–74. For the reasons stated below, Defendants' Motion for Summary Judgment is **DENIED** as to Count III.

An excessive force claim arising in the context of an arrest or investigative stop invokes the protections of the Fourth Amendment. See Graham, 490 U.S. at 394–95. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). As analyzed above, it is disputed whether Flinn was moving his wrists apart to prevent arrest, which precludes summary judgment as to Count III. Viewing the evidence in the light most favorable to Flinn, a reasonable jury could interpret the evidence as indicating that Flinn was not resisting arrest, thus impacting any analysis of whether the use of force was reasonable. While police officers are generally entitled to qualified immunity for claims involving use of force, Kisela v. Hughes, 584 U.S. 100, 105 (2018), in the face of a genuine disputes of material fact related to the immunity analysis, "a decision on qualified immunity w[ould] be premature," Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002). Here, the disputed facts about whether Flinn was resisting arrest are "material to the objective

reasonableness of [Defendants]' conduct" and "give rise to a jury issue," thus precluding summary judgment. Curley, 298 F.3d at 278.[16]

### D. Count IV: Assault and Battery

Count IV brings a claim for assault and battery. ECF 1 ¶¶ 75–79. For the reasons stated below, Defendants' Motion for Summary Judgment is **DENIED** as to Count IV.

Sovereign immunity, codified in Title 1 of Pennsylvania Consolidated Statutes § 2310, provides that "the Commonwealth, and its officials and employees acting within the scope of their duties . . . remain immune from suit excepts as the General Assembly shall specifically waived the immunity." A Commonwealth employee acting within the scope of his employment is protected from the imposition of liability for intentional tort claims by sovereign immunity. La Frankie v. Miklich, 618 A.2d 1145 (Pa. 1992). Here, it is undisputed that Defendants, as Pennsylvania State Troopers, are entitled to the protections of sovereign immunity for conduct within the scope of their duties, subject only to certain non-applicable exceptions. Thus, Defendants could only be liable under Count IV if they were acting outside the scope of their employment.

In Pennsylvania, conduct is within the scope of an employee's employment if it (1) is of the kind of conduct he is employed to perform, (2) occurs substantially within the authorized time and space limits, (3) is actuated by a purpose to serve the employer, and (4) the use of force used by the employee is not unexpectable by the employer. Just. v. Lombardo, 208 A.3d 1057, 1060 (Pa. 2019) (citing Restatement (Second) of Agency § 228(1) (1958)). It is undisputed that, at the

---

[16] As Defendants note, Flinn's opposition fails to address Defendants' argument that they are entitled to qualified immunity on the excessive force claim. ECF 31 at 6. As the Court noted, it would be premature to address qualified immunity at this junction. However, the Court highlights that Flinn's brief appears to conflate sovereign and qualified immunity.

time of the "leg sweep," Nguyen was on duty, wearing his official uniform, arrived in a marked police vehicle, and was responding to a 911 call. It is also undisputed that the leg sweep occurred during an attempt to effectuate an arrest. However, there is a dispute as to whether the leg sweet was authorized by the use of force policy, and since this Court has found that a jury could reasonably conclude that the leg sweep was unreasonable, it is possible that "the conduct may be seen as sufficiently outrageous and 'unexpectable by the master' that sovereign immunity does not apply." Barkus v. Knirnschild, 2018 WL 1244515, at *13 (W.D. Pa. Mar. 9, 2018); see Leone v. Stipcak, 2015 WL 75159, at *11 (M.D. Pa. Jan. 6, 2015) (same). In line with Pennsylvania courts' approach, Orr v. William J. Burns Int'l Detective Agency, 337 Pa. 587, 590 (1940), this Court cannot grant summary judgment on Count IV because a reasonable jury could conclude that the use of force in the form of the leg sweep was "unexpectable" by the employer, Lombardo, 652 Pa. at 592 (citing Restatement (Second) of Agency § 228(1) (1958)).

### E. Count V: IIED

Count V brings a claim for intentional infliction of emotional distress ("IIED"). ECF 1 ¶¶ 80–85. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED** in favor of Defendants as to Count V.

To establish IIED under Pennsylvania law, a plaintiff must show that the defendant intentionally or recklessly[17] engaged in extreme and outrageous conduct that caused plaintiff severe emotional distress and resulted in harm. Hoy v. Angelone, 691 A.2d 476, 510 (Pa. Super. Ct. 1996). An IIED claim is appropriate only for "the most egregious conduct," id., which must

---

[17] Intent to harm, malice, tortious conduct, and criminal conduct are not enough to establish an IIED claim. See Hoy v. Angelone, 691 A.2d 476, 510 (Pa. Super. Ct. 1996) (citing Restatement (Second) of Torts § 46, comment d).

be so outrageous and extreme that it goes "beyond all possible bounds of decency," Atamian v. Assadzadeh, 2002 WL 538977, at *5 (E.D. Pa. April 9, 2002) (Buckwalter, J.).

Flinn fails to provide sufficient evidence to permit his IIED claim to proceed. He submits no evidence related to his alleged emotional distress and thus fails to meet his burden of showing a genuine dispute of material fact. See Robinson v. May Dep't Stores Co., 246 F. Supp. 2d 440, 444 (E.D. Pa. 2003) (Brody, J.) (granting summary judgment because plaintiff failed to produce medical evidence of emotional distress). Flinn also presents no evidence that Defendants' conduct was intentional, reckless, or rose to the level of extreme and outrageous[18] behavior.[19]

## V. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment, ECF 25, is **GRANTED in part and DENIED in part**. An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-2706 Flinn v Lawless\24-2706 Memo on Summary Judgment.docx

---

[18] Pennsylvania law recognizes IIED only in extraordinary circumstances, such as when a defendant killed the plaintiff's child and concealed the body, fabricated evidence leading to a wrongful murder charge, or released false medical information about a fatal illness. See Hoy, 554 Pa. at 152. The conduct alleged here does not "go beyond all possible bounds of decency" and cannot "be regarded as atrocious and utterly intolerable in a civilized community." Atamian v. Assadzadeh, 2002 WL 538977, at *5 (E.D. Pa. April 9, 2002) (Buckwalter, J.); see Dull v. West Manchester Tp. Police Dept., 604 F. Supp. 2d 739, 755–56 (M.D. Pa. 2009) (dismissing IIED claim where officer's act of handcuffing plaintiff and slamming her body into the side of an SUV with great force was not "extreme and outrageous" conduct).

[19] Flinn contests the applicability of sovereign immunity but does not address Defendants' argument that cannot establish the claim's substantive elements. ECF 28-2 at 15–16; ECF 25 at 43–48. Flinn's failure to respond to Defendants' argument on the merits of the IIED claim may constitute abandonment. See Certain Underwriters at Lloyd's London, 2013 WL 3213345, at *7.